## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| **LISA A. HAMILTON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No. 3:18-cv-01309** |
| v. | ) | **Judge Richardson/ Frensley** |
| | ) | |
| **ANDREW M. SAUL,** | ) | |
| **COMMISSIONER OF SOCIAL SECURITY** | ) | |
| **ADMINISTRATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Disability Insurance Benefits ("DIB"), as provided under Title II of the Social Security Act ("the Act"). The case is currently pending on Plaintiff's "Motion for Judgment Upon the Administrative Record." Docket No. 17. Plaintiff has filed an accompanying Memorandum. Docket No. 18. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 19. Plaintiff has filed a Reply. Docket No. 20.

For the reasons stated below, the undersigned recommends that Plaintiff's "Motion for Judgment Upon the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

### I. INTRODUCTION

Plaintiff filed her application for Disability Insurance Benefits ("DIB") on May 9, 2016,

1

alleging that she had been disabled since August 15, 2014, due to "bulging disc in my lower back", "cant [*sic*] stand on flat feet legs ankles and knees," "HIHG [*sic*] and Low, HBP," "hot flasher [*sic*] in days and hot flashers [*sic*] at night," and " headaches." *See, e.g.,* Docket No. 15, Attachment ("TR"), pp. 139-145, 181. Plaintiff's application was denied both initially (TR 60) and upon reconsideration (TR 75). Plaintiff subsequently requested (TR 89-90) and received (TR 29-49) a hearing. Plaintiff's hearing was conducted on November 13, 2017 by Administrative Law Judge ("ALJ") H. Scott Williams. TR 29. Plaintiff and Vocational Expert ("VE"), Cindy Harris, appeared and testified. TR 29-49.

On March 13, 2018, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR 11-28. Specifically, the ALJ made the following findings of fact:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2019.

2. The claimant has not engaged in substantial gainful activity since August 15, 2014, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: degenerative disc disease in the lumbar spine, obesity, hypertension and migraine headaches. (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can frequently reach overhead

and in all other directions; frequently handle, finger and feel; can frequently operate hand controls and foot controls bilaterally; occasionally climb ramps and stairs but never ladders, ropes or scaffolds; occasionally balance but never stoop, kneel, crouch, or crawl; can never be exposed to unprotected heights, moving mechanical parts or operating a motor vehicle; can occasionally be exposed to wetness, humidity and pulmonary irritants; and can never be exposed to temperature extremes or vibration.

6.   The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7.   The claimant was born on July 22, 1965 and was 49 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563).

8.   The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.   Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404. 1569(a)).

11.  The claimant has not been under a disability, as defined in the Social Security Act, from August 15, 2014, through the date of this decision (20 CFR 404.1520(g)).

TR 16-23.

On April 9, 2018, Plaintiff timely filed a request for review of the hearing decision. TR

137. On October 4, 2018, the Appeals Council issued a letter declining to review the case (TR 1-

4), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II. REVIEW OF THE RECORD

The parties and the ALJ have summarized and discussed the medical and testimonial evidence of record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III. CONCLUSIONS OF LAW

### A. Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine: (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support the conclusion." *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389 (6th Cir. 1999), *citing Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc. Sec.,* 105 F.3d 244, 245 (6th Cir. 1996), *citing Consol. Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229 (1938).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the ALJ must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389, *citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion is undermined. *Hurst v. Sec'y of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985), *citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnoses and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

### B.  Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied.  42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process summarized as follows:

> (1)  If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.
>
> (2)  If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.
>
> (3)  If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments or its equivalent.[1]  If a listing is met or equaled, benefits are owing without further inquiry.
>
> (4)  If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations).  By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a prima facie case of disability.
>
> (5) The burden then shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

*See, e.g.* 20 CFR §§ 404.1520, 416.920.  *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule.  *Moon*,

---

[1] The Listing of Impairments is found at 20 CFR § 404, Subpt. P, App. 1.

923 F.2d at 1181; 20 CFR § 404, Subpt. P, App. 2, Rule 200.00(e)(1), (2). *See also Damron v. Sec'y of Health & Human Servs.*, 778 F.2d 279, 281-82 (6th Cir. 1985). Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's prima facie case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments: mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

### C. Plaintiff's Statement Of Errors

Plaintiff contends that the ALJ: (1) improperly discounted Plaintiff's credibility; (2) did not properly consider and accord sufficient weight to the opinion of Plaintiff's treating physician; (3) did not properly evaluate Plaintiff's Residual Functional Capacity; and (4) posed questions to the VE that did not accurately reflect her limitations. Docket No. 18. Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded. *Id.*

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994).

## 1. Credibility and Subjective Complaints of Pain

Plaintiff contends that the ALJ improperly discounted her credibility and did not appropriately address her subjective complaints of pain. Docket No. 18, p. 13. Specifically, Plaintiff argues that evidence in the record supports Plaintiff's claims of severe pain including her "patient questionnaire to see the doctor at Premier" and her physical therapy discharge summary. *Id.* Plaintiff further argues that she "consistently report[ed] difficulty with prolonged sitting and standing and that her symptoms were relieved by sitting or lying down." *Id.* at 13-14. Plaintiff asserts that, although the ALJ stated that there are minimal treatment records to support Plaintiff's subjective complaints of pain, "the ALJ does not discuss at all the Plaintiff's statements and the evidence in the record explaining her inability to afford medical treatment" and her lack of health insurance. *Id.* at 14. Plaintiff notes that "the record supports the Plaintiff's testimony that she was not prescribed narcotic pain medications due to an inability to afford them, and was instead given anti-inflammatory and other medication." *Id., citing* TR 380-381;

401-402; 418-419; 422-423; 427-427; 431-432; 436-437; 443-444.

Defendant responds that "the ALJ properly evaluated the consistency of Plaintiff's subjective complaints in a manner that was consistent with agency regulations and policy as they existed at the time of the decision." Docket No. 19, p. 12. Defendant maintains that "the ALJ considered Plaintiff's allegations, testimony, and initial treatment," and argues that Plaintiff's treatment records showed improvement. *Id.* at 13, 15. With regard to Plaintiff's argument that she could not afford treatment, Defendant responds that the ALJ noted that "this is a claim for Title II benefits, not the Title XVI benefits which would indicate Plaintiff is indigent." *Id.* at 14. Defendant further responds that while some records do indicate complaints of financial hardship, Plaintiff did not follow up on an offer for financial assistance from her physical therapist's office and was able to afford treatment from Dr. McKinney. *Id., citing* TR 20, 258. With regard to Plaintiff's argument that she was prescribed anti-inflammatory medications instead of narcotics due to financial hardship, Defendant responds that "the shortcoming of this argument is that even if the medications were minimal they still controlled her symptoms according to her providers." *Id.* at 17.

Plaintiff replies that "the ALJ maintains a duty under the rules and regulations to provide a basis for any finding that the Plaintiff is or is not consistent and supportable in statements made regarding their disability." Docket No. 20, p. 4, *citing* 20 CFR § 404.1529, SSR 16-3 p. Plaintiff further responds stating that the Commissioner provides impermissible post hoc reasoning when discussing the lack of support and consistency regarding Plaintiff's statements. *Id.* at 4. Plaintiff additionally replies that "the Commissioner does not address the fact that the Plaintiff requested to change her alleged onset date to July 21, 2015, (Record, pp. 31-32), a date after the Plaintiff

saw Dr. McKinney's practice complaining of back pain." *Id.* Plaintiff responds that the Commissioner's position regarding the change in the alleged onset date "is contradictory, claiming irrelevance on the one hand and then employing the original alleged onset date in post-hoc reasoning to defeat an assertion made by Plaintiff."[2] *Id.* Plaintiff also responds that the ALJ's one sentence paragraph regarding Plaintiff's allegations, testimony, and initial treatment fails to meet the requirements outlined in 20 CFR § 404.1529, and that there were numerous occasions where Plaintiff's testimony and medical evidence contradicted the conclusion of the ALJ. *Id.* at 5.

The Sixth Circuit has set forth the following criteria for assessing a plaintiff's subjective allegations, including pain:

> [S]ubjective allegations of disabling symptoms, including pain, cannot alone support a finding of disability . . . . [T]here must be evidence of an underlying medical condition *and* (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition *or* (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

*Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 852-53 (6th Cir. 1986), *quoting* S. Rep. No. 466, 98th Cong., 2d Sess. 24 (emphasis added); *see also* 20 CFR §§ 404.1529, 416.929 ("statements about your pain or other symptoms will not alone establish that you are disabled . . . ."); *Moon v. Sullivan*, 923 F.2d 1175, 1182-83 (6th Cir. 1990) ("though Moon alleges fully

---

[2] While Plaintiff is correct that the ALJ cited the incorrect alleged onset date in his decision, the ALJ's misstatement is harmless error because, as is demonstrated in the quoted passages herein, the ALJ discusses evidence that reveals inconsistencies in the medical records that occurred after the Plaintiff's requested amended alleged onset date of July 21, 2015. Because the ALJ's decision discusses evidence from after Plaintiff's amended alleged onset date and the ALJ's decision is well-supported by the evidence, the ALJ's misstatement is not grounds for remand.

disabling and debilitating symptomatology, the ALJ may distrust a claimant's allegations . . . if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict each other."). Moreover, "[a]llegations of pain . . . do not constitute a disability, unless the pain is of such a debilitating degree that it prevents an individual from participating in substantial gainful employment." *Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1227 (6th Cir. 1988).

When analyzing the claimant's subjective complaints of pain, the ALJ must also consider the following factors and how they relate to the medical and other evidence in the record: the claimant's daily activities; the location, duration, frequency, and intensity of claimant's pain; the precipitating and aggravating factors; the type, dosage, and effect of medication; and the other treatment or measures to relieve pain. *See Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994)*, construing* 20 CFR § 404.1529(c)(2). After evaluating these factors in conjunction with the evidence in the record, and by making personal observations of the claimant at the hearing, an ALJ may determine that a claimant's subjective complaints of pain and other disabling symptoms are not credible. *See, e.g., Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997); *Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 230 (6th Cir. 1990); and *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524, 538 (6th Cir. 1981).

The ALJ in the case at bar ultimately found that "the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." TR 18. The ALJ explained his rationale for so finding as follows:

> Although the claimant alleges to have become disabled in August
> 2014, our records do not begin until October 2014, when the

claimant was seen in the emergency department with complaints of shortness of breath, blood pressure problems and weakness with hot flashes related to menopause. She noted she had just started a new job two weeks prior. She denied back pain. The examination revealed five out of five strength with normal gait. She had normal and full range of motion in her spine and extremities. A cardiovascular examination showed regular rate and rhythm with normal heart sounds. She was in no respiratory distress with normal breath sounds and no wheezing. Her blood pressure upon arrival was normal at 125/74. A chest x-ray and EKG were normal. Her symptoms improved and she was discharged in stable condition. (Exhibit 2F, pgs. 83-103).

In November, she was treated emergently for a migraine headache. She reported that at its worst, her pain was moderate. Her examination was normal with normal range of motion, normal strength and normal respirations. Her blood pressure was elevated at 151/91. She was treated with Haldol, Benadryl and Norco and her symptoms improved. (Exhibit 2F, pgs. 77-82). Later, X-rays of the lumbar spine showed mild degenerative disc disease and mild facet arthritis at L4-S1. (Exhibit 2F, pgs. 72-76). In January 2015, the claimant reported a few months history of low back pain, which was moderate in severity. She noted radiation to the right lower extremity, and was worse with prolonged standing. She also complained of recurrent headaches. Her prescribed medications included Atenolol, Diclofenac, Fluoxetine, Lisinopril, and Simvastatin. She had normal range of motion in the cervical spine. In the lumbar spine, there was no spinal tenderness. There was decreased range of motion with mild paraspinal muscle spasm and a positive straight leg raise. She received a Depomedrol injection and medications refilled [*sic*]. She was referred to physical therapy. (Exhibit 3F, pgs. 4-7).

The claimant was evaluated at Results Physical Therapy to begin a series of physical therapy treatment. The claimant reported that she was working part time, about fifteen hours per week, and was independent with her personal care without difficulty. She noted her low back pain was interfering [with] her ability to stand at work. She rated her average pain at a five on a scale of ten with radiation to her lower extremities. Testing revealed reduced strength in the bilateral hips with tenderness to palpation. Physical therapy was recommended for three times a week over a period of four weeks. However, the claimant only received two physical therapy treatments and was discharged after failing to return to

treatment and failing to return phone messages related to her follow-up. (Exhibit 1F).

In April of 2015, the claimant was seen in the emergency department for treatment of migraine headache. An examination was performed and noted normal and full range of motion in the cervical and lumbar spine. Her gait was steady and normal motor function. Her blood pressure was elevated at 155/89. Her neurologic evaluation was normal. She was treated with Toradol, Phenergan and Decadron and her symptoms improved. (Exhibit 2F, pgs. 49-57).

There are no treatment records until August 2015, when an MRI of the lumbar spine was performed and showed L4-L5 facet arthropathy causing minimal left foraminal stenosis. At L5-S1, there was a small posterior disc bulge and facet arthropathy producing minimal to mild bilateral foraminal stenosis. (Exhibit 2F, pgs. 41-43).

In September 2015, the claimant was referred for evaluation by Dr. Richie. During her evaluation, the claimant described moderate to severe non-radiating low back pain. She noted her pain was worse with standing, prolonged sitting, walking, bending, lifting and sleeping. She noted physical therapy was not helpful. She also complained of bilateral knee, ankle and foot pain, but denied numbness, tingling or weakness. She had full and painless range of motion in the cervical spine. She had full range of motion with normal strength and sensation in the upper extremities. In the lumbar spine, there was no tenderness to palpation and her strength was difficult to assess secondary to complaints of pain. In the lower extremities, she had full range of motion, normal strength and no evidence of tenderness or instability. She complained of mild discomfort in heel rises. Her gait was normal. Her diagnosis was Sciatica and she was provided prescriptions for a Medrol Dosepak and Flexeril. (Exhibit 4F).

There are no treatment notes related to the claimant's severe impairments for almost one year.

In August 2016, the claimant was examined by Dr. Roy Johnson at the request of the State agency. The claimant's complaints included low back pain, high blood pressure, migraine headaches, and hot flashes. Dr. Johnson described the claimant as being alert and in no distress. Her neck showed full range of motion and her lungs were

clear to auscultation. She had tenderness to palpation at L4-L5 though her range of motion was full. Her gait was normal but she was unable to tandem walk, heel walk or toe walk. She could squat and rise and balance on each foot. She was neurologically intact. Dr. Johnson's diagnostic impression included low back syndrome, post-menopause, hypertension and headaches. As for his final opinion, Dr. Johnson opined the claimant could occasionally lift ten pounds, stand and walk at least two hours and did not have any restrictions in sitting. (Exhibit 5F).

Later in the month, the claimant was examined by Dr. McKinney, where she noted her previous provider "does not do disability" and she needed treatment from a provider who would assist her in obtaining disability. The claimant reported that she had low back pain with radiation to the bilateral lower extremities, noting she had been unable to work since April 2015. She noted difficulty with walking and standing. The examination noted the claimant moved her extremities well. Her gait was normal with no sensory deficits. She had a normal and cooperative affect. She was prescribed Tramadol for pain.

In April 2017, Dr. McKinney noted the claimant reported good results from her Tramadol and good results with physical therapy. Her physical examination was entirely within normal limits, with normal motion in the upper and lower extremities and normal gait and station. Her Tramadol was continued. (Exhibit 9F).

At her final recorded treatment note, in September 2017, the claimant reported she was "waiting on disability." She noted chronic back pain with radiation to her lower extremities, but reported good relief with Tramadol. On a review of systems, she denied fatigue or malaise. She denied shortness of breath, tingling or numbness in her extremities. The examination noted she moved her upper and lower extremities well, and her gait was normal. Her straight leg raise was negative. She denied medication side effects. It was specifically noted: "Patient still experiences mild pain but gets relief from meds. Patient is able to function and perform ADL with help of meds." Her medications were continued without change. (Exhibit 12F).

The claimant testified that she had headaches daily, with a migraine headache occurring once each week. She stated she had bulging discs in her spine, knee problems and ankle problems. She stated she could not stand, walk or bend. She noted she did not

have insurance so she did not have regular medical treatment. She stated she takes Tramadol for pain, and it helps for a while. She stated she was in constant pain in her back and it hurts even when she is sitting. She estimated she could sit thirty to forty five minutes before having pain. She estimated she could stand or walk only twenty minutes. She stated she was able to lift her granddaughter, who weighs eighteen pounds, but it sometimes hurt to do so. She stated she relies on her daughter to do the household chores and cooking. She stated she did not drive at all. Her daughter helps her with grocery shopping. She stated it was difficult for her to shower and she did not shower regularly. She stated she had difficulty with reading and writing.

While the claimant was a sincere witness, the objective medical evidence fails to support the extreme limitations alleged by the claimant. Records reflect the claimant reported her pain to be no more than moderate. Range of motion testing and gait testing has been normal throughout the record. An MRI of the lumbar spine showed minimal to mild facet arthropathy with no significant stenosis. (Exhibit 2F, pgs. 41-43). There is no evidence that the claimant reported to any of her medical providers that she was unable to sit for more than thirty minutes, unable to stand or walk more than twenty minutes, or required a two hour nap each day. Records also note claimant's very minimal treatment, which was almost exclusively general refills for pain medications, fail to support her reports of severe pain.

TR 18-20.

As can be seen, the ALJ's decision specifically addresses not only the medical evidence, but also Plaintiff's testimony and her subjective claims, clearly indicating that these factors were considered. TR 18-20. The ALJ's articulated rationale demonstrates that, although there is evidence which could support Plaintiff's claims, the ALJ chose to rely on evidence that was inconsistent with Plaintiff's allegations. This is within the ALJ's province.

The ALJ, when evaluating the entirety of the evidence, is entitled to weigh the objective medical evidence against Plaintiff's subjective claims of pain and reach a credibility determination. *See, e.g., Walters,* 127 F.3d at 531; *Kirk,* 667 F.2d at 538 (6th Cir. 1981). An

ALJ's findings regarding a claimant's credibility are to be accorded great weight and deference, particularly because the ALJ is charged with the duty of observing the claimant's demeanor and credibility. *Walters,* 127 F.3d at 531, *citing Villarreal v. Sec'y of Health & Human Servs.,* 818 F.2d 461, 463 (6th Cir. 1987). Discounting credibility is appropriate when the ALJ finds contradictions among the medical reports, the claimant's testimony, the claimant's daily activities, and other evidence. *See Walters*, 127 F.3d at 531, *citing Bradley,* 862 F.2d at 1227; *cf King v. Heckler*, 742 F.2d 968, 974-75 (6th Cir. 1984); and *Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 921 (6th Cir. 1987). If the ALJ rejects a claimant's testimony as not credible, however, the ALJ must clearly state the reasons for discounting a claimant's testimony (*see Felisky*, 35 F.3d at 1036), and the reasons must be supported by the record. S*ee King*, 742 F.2d at 975.

As discussed above, after assessing the medical and testimonial evidence, the ALJ ultimately determined that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." TR 18. In making this determination, the ALJ observed Plaintiff during her hearing, assessed the medical records, and reached a reasoned decision; the ALJ's findings are supported by substantial evidence and the decision not to accord full credibility to Plaintiff's allegations was proper. Therefore, this claim fails.

## 2. **Weight Accorded to the Opinion Evidence**

Plaintiff argues that the ALJ "failed to analyze the opinion of Dr. Roger McKinney, M.D. in a manner consistent with 20 C.F.R. § 404.1527(c) as required by applicable law." Docket

No.18, pp. 9, 11. Plaintiff further argues that the ALJ improperly failed to discuss the abnormal MRI results in the record, as well as Dr. McKinney's and Dr. Johnson's abnormal exam findings. *Id.* at 10. Plaintiff additionally maintains that the ALJ failed to "discuss the overall consistency of Dr. McKinney's opinion with that of the consultative examiner Dr. Roy Johnson, M.D." *Id.* Plaintiff asserts that the opinion of Dr. Roy Johnson is "consistent with that of Dr. McKinney and effectively resulted in the same type of vocational limitations, even though it is perhaps not quite as detailed." *Id.* Plaintiff maintains that the ALJ did not address the "consistency of the consultative examining physician's opinion with that portion of Dr. McKinney's opinion, and brushes off the abnormal MRI test results which underlay Dr. McKinney's opinion without any discussion of the reason except to state erroneously that "there are no significant abnormal examination findings." *Id.* at 11-12. Plaintiff argues that "the ALJ also fails to adequately discuss the weight given to both the treating physician opinion and that of the consultative examiner." *Id* at 12.

Defendant responds that the ALJ properly considered the opinions of Dr. McKinney, Dr. Johnson, and "the other relevant opinions of record." Docket No. 19, p.4, *citing* TR. 19-21. Defendant asserts, "while the ALJ analyzed Dr. McKinney's opinion in a manner consistent with the evaluation of a treating physician opinion, that would not have been required." *Id.* at 7, *citing* TR 21. Specifically, Defendant notes that "the regulations make clear that a relationship based solely on [a claimant's] need to obtain a report in support of [a] claim for disability" does not constitute a 'treating source'." *Id.* at 6, *citing Staymate v. Comm'r of Soc. Sec.,* 681 F. App'x 462, 467 (6th Cir. 2017) (*citing* 20 CFR § 416.902). Defendant replies that the ALJ, in addressing why he did not give controlling weight to the entirety of Dr. McKinney's opinion, "properly explained

that the limitations in using the upper and lower extremities as well as the sitting limitation found no support in the record, and pointed out specific portions of the record that refuted these findings." *Id.* at 10. Defendant further responds that "the ALJ properly considered the 'consistency' and 'supportability' of the record as the regulation requires" and asserts that the ALJ does not need to go through and analyze all of the regulatory factors when evaluating a physicians opinion. *Id., citing* 20 CFR § 404.1527.  With regard to Plaintiff's argument pertaining to the conclusions the ALJ rendered regarding State agency physicians' opinions, Defendant replies "the ALJ properly considered the opinions of agency doctors as is permitted." *Id.* at 11. Defendant observes that "the ALJ actually explained that the residual functional capacity finding would be more restrictive based on Dr. McKinney's opinion when compared to the opinion of agency doctors." *Id.* With regard to the medical opinion of Dr. Johnson, Defendant responds stating, "the ALJ explained that Dr. Johnson's examination was largely normal and that the conclusions were inconsistent with objective medical findings." *Id., citing* TR 21. Defendant further responds stating "the lack of support is, however, a proper reason to give less weight to an opinion, even if from a consulting doctor." *Id* at 11.

Plaintiff replies that "nowhere in the Commissioner's argument claiming that the ALJ was justified in discounting Dr. McKinney's opinion, does the Commissioner acknowledge or explain the importance of the claimant's testimony at the hearing that she had been a patient of Dr. McKinney's since the age of 16 - some 36 years since the Plaintiff was age 52 at the time of the hearing."  Docket No. 20, p. 2. Specifically, Plaintiff argues that "the ALJ ignored this information from the Plaintiff and proceeded to discount the treating physician opinion because in part, the alleged 'few occasions' when Plaintiff had seen Dr. McKinney." *Id., citing* Docket No.

19, p. 7. Plaintiff further asserts that "nowhere in the Commissioner's response to the Motion for Judgement on the Record does the Commissioner acknowledge this testimony or how it might fit into any analysis under the treating physician rule, especially when considering the nature and length of the treating relationship as required by 20 C.F.R. 1527." *Id.* at 2. Specifically, Plaintiff argues "this testimony was clearly part of Plaintiff's argument as to why Dr. McKinney is a treating physician and why the ALJ did not properly consider the treating physician opinion." *Id., citing* Docket No. 20, p. 3. Plaintiff contends that "the Commissioner completely fails to address how the consistency between the opinion of the treating physician, Dr. McKinney and the examining physician, Dr. Johnson, should be considered." *Id.* at 3. Specifically, Plaintiff argues "the ALJ makes no mention of the similarities between the conclusions of Dr. Johnson, the examiner, and Dr. McKinney, the treating physician, nor does the Commissioner in her argument." *Id.* Plaintiff further responds that the Commissioner was "simply making an unexamined claim that the ALJ properly assessed the opinion evidence." *Id.*

With regard to the evaluation of medical evidence, the Code of Federal Regulations states:

> Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (c)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.
> (1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.
> (2) Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating

source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques *and is not inconsistent with the other substantial evidence in your case record*, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion. . . .

(3) Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion . . . .

(4) Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.

(5) Specialization. We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.

. . .

20 CFR § 416.927(c) (emphasis added). *See also* 20 CFR § 404.1527(c).

The ALJ must articulate the reasons underlying his decision to give a medical opinion a specific amount of weight.[3] *See, e.g.,* 20 CFR § 404.1527(d); *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646 (6th Cir. 2009); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). The reasons must be supported by the evidence and must be sufficiently specific so as to make clear to any subsequent reviewers the weight the ALJ gave to the treating source medical opinion and

---

[3] There are circumstances when an ALJ's failure to articulate good reasons for the weight accorded to medical opinions may constitute harmless error: (1) if a treating source opinion is so patently deficient that the ALJ could not possibly credit it; (2) if the ALJ adopts the opinion or makes findings consistent with the opinion; and/or (3) if the ALJ has complied with the goal of 20 CFR § 1527(d), by analyzing the physician's contradictory opinions or by analyzing other opinions of record. *See, e.g., Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010); *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470-72 (6th Cir. 2006); *Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 464 (6th Cir. 2006).

the reasons for that weight.  SSR 96-2p.

The Sixth Circuit has held that, "[p]rovided that they are based on sufficient medical data, the medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002), *quoting Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985).  If the ALJ rejects the opinion of a treating source, however, he is required to articulate some basis for rejecting the opinion.  *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987).  The Code of Federal Regulations defines a "treating source" as:

> [Y]our own physician, psychologist, or other acceptable medical source who provides you or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you.

20 CFR § 404.1502.

The ALJ in the instant action discussed the medical opinion evidence as follows:

> As for the opinion evidence, the significant weight is accorded to the opinion of the claimant's primary care provider, Dr. McKinney, who opined the claimant could lift and carry up to twenty pounds occasionally, sit a total of six hours in a workday, stand and walk a total of four hours in an eight hour workday; frequently reach, handle, finger, feel, push and pull; can frequently operate foot controls; could occasionally climb ramps and stairs but never ladders, ropes or scaffolds; occasionally balance and never stoop, kneel, crouch and crawl; and should avoid unprotected heights, moving mechanical parts, operating a motor vehicle, temperature extremes, pulmonary irritant, humidity and wetness, temperature extremes and vibration. (Exhibit 8F). While the undersigned accords the greatest weight to these opinions, Dr. McKinney's opinions regarding the claimant's ability to perform manipulative tasks is not supported by the evidence. By the claimant's own statements, she has no difficulty in doing tasks that require the use of her hands. Further, there have been no abnormal findings related to the claimant's upper or lower extremities that would support these opinions. Little weight is also accorded to Dr. McKinney's

opinion that the claimant could sit only two hours at one time, stand two hours at one time, or walk thirty minutes at one time. There are no significant abnormal examination findings that support these limitations.

At the initial level of the claims process, the State agency medical consultants opined the claimant could perform a range of light exertional level work activities, with lifting and carrying of twenty pounds occasionally and ten pounds frequently; standing and/or walking about six hours in an eight hour workday; sitting about six hours in an eight hour workday; and occasionally climbing, balancing, stooping, kneeling, crouching and crawling. (Exhibit 1A). Upon reconsideration, and in light of updated medical evidence, the State agency consultants opined the claimant could perform light work, but would be less restricted in her ability to balance, kneel and crouch, and could frequently perform these tasks. (Exhibit 4A). The undersigned accords partial weight to the opinions of the State agency consultants in determining the above residual functional capacity. However, based upon more recent evidence, as well as the opinions of the claimant's own primary treating provider, the undersigned finds the claimant would have greater limitation in her ability to perform postural activities, including stooping, kneeling, crouching and crawling. The undersigned also finds the claimant should avoid wetness, humidity, pulmonary irritants, temperature extremes and vibrations due to her hypertension and migraine headaches. These additional limitations are more consistent with the record as a whole, as well as consistent with the opinions of the claimant's primary care provider, Dr. McKinney.

Little weight is accorded the [*sic*] opinion of Dr. Roy Johnson, who opined the claimant could lift up to ten pounds occasionally, and stand and walk at least two hours during an eight-hour day. Dr. Johnson's examination was largely normal, and this degree of limitation is inconsistent with the objective medical findings. By the claimant's own statements, she is able to lift and carry her eighteen-pound granddaughter. His opinion that the claimant could stand and walk "at least" two hours in a workday does not reflect the maximum amount of time the claimant could perform these tasks. Therefore, the opinions are accorded very little weight.

TR 21.

As the Regulations state, the ALJ is not required to give controlling weight to a treating physician's evaluation when that evaluation is inconsistent with other substantial evidence in the record. *See* 20 CFR § 416.927(d)(2); 20 CFR § 404.1527(d)(2). Instead, when there is contradictory evidence, the treating physician's opinion is weighed against the contradictory evidence under the criteria listed above. *Id.* When the opinions are inconsistent with each other, the final decision regarding the weight to be given to the differing opinions lies with the Commissioner. 20 CFR § 416.927(e)(2).

As can be seen, the ALJ accorded significant weight to the portions of Dr. McKinney's opinion that he felt were consistent with, and supported by, the evidence. As can also be seen, the ALJ explained his rationale for discounting the portions of Dr. McKinney's opinion that he felt were inconsistent with, and unsupported by, the evidence. Because part of Dr. McKinney's opinion, part of the consultative examiners opinion, and Dr. Johnson's opinion were inconsistent with other substantial evidence in the record, the Regulations do not mandate that the ALJ accord the entirety of Dr. McKinney s evaluation, the entirety of the State examiner's opinion, and Dr. Johnson's evaluation controlling weight. Accordingly, Plaintiff's argument regarding the ALJ's failure to adopt Dr. McKinney's and the State examiner's opinions in their entirety and the failure to adopt Dr. Johnson's opinion fails.

### 3. Residual Functional Capacity ("RFC")

Plaintiff maintains that the ALJ improperly discredited Plaintiff's testimony regarding her ability to perform daily activities, and that the ALJ has not shown that the activities stated can be performed on a sustained basis. Docket No. 18, p. 15. Plaintiff argues "where the ALJ has not shown that such activities can be performed on such a sustained basis, there is no support for

using these activities to determine that a disability claimant can perform work." *Id., citing Miller v. Commissioner,* 811 F.3d 825, 838 (6th Cir., 2016).

Defendant replies that the ALJ "properly considered that Plaintiff could perform activities of daily living." *Id.* at 16. Specifically, Defendant argues that the ALJ based this on medical reports from her physician and physical therapist, as well as on her testimony that she could partially lift an 18 pound child. *Id.* Defendant further responds that Plaintiff improperly cites cases out of context within their brief to show support for their argument related to the performance of daily activities. *Id* at 17. Defendant maintains that "the abilities cited here by the ALJ were not cited to show, alone, an ability to work, they were cited to show an inconsistency with Plaintiff's allegations and to show that she told her doctor she could perform her daily activities." *Id.*

"Residual Functional Capacity" is defined as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 CFR § 404, Subpt. P, App. 2 § 200.00(c). With regard to the evaluation of physical abilities in determining a claimant's RFC, the Regulations state:

> When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce your ability to do past work and other work.

20 CFR § 404.1545(b).

The ALJ in the case at bar ultimately determined that Plaintiff retained the RFC for light

work as defined in 20 CFR 404.1567(b) with additional limitations. TR 17. The ALJ explained:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can frequently reach overhead and in all other directions; frequently handle, finger and feel; can frequently operate hand controls and foot controls bilaterally; occasionally climb ramps and stairs but never ladders, ropes or scaffolds; occasionally balance but never stoop, kneel, crouch or crawl; can never be exposed unprotected heights, moving mechanical parts or operating a motor vehicle; can occasionally be exposed to wetness, humidity and pulmonary irritants; and can never be exposed to temperature extremes or vibration.

*Id.*

While Plaintiff is correct that a claimant's sporadic daily activities may not indicate what a claimant can do on a sustained basis, particularly where the claimant experiences periods of remission and exacerbation, the ALJ should consider a claimant's reported daily activities when rendering an RFC determination. *See, e.g., Cohen v. Sec'y of Dep't of Health & Human Servs.*, 964 F.2d 524 (6th Cir. 1992).

As has been demonstrated in the statements of error above, the ALJ properly evaluated the medical and testimonial evidence of record, including Plaintiff's reported level of activity, and ultimately determined that Plaintiff retained the RFC to perform light work with additional limitations. TR 17. The ALJ properly evaluated the evidence in reaching this RFC determination, and the Regulations do not require more.

**4.  Hypothetical Questions and Reliance on the VE's Testimony Related Thereto**

Plaintiff argues that the ALJ's hypothetical questions posed to the VE did not accurately reflect her exertional and nonexertional limitations, and therefore, the ALJ erred in relying upon

the VE's testimony to establish the existence of a significant number of jobs in the national economy that Plaintiff could perform. Docket No. 18, p. 9-10. Specifically, Plaintiff argues that "the ALJ claims to give 'significant weight' to the treating physician opinion, while discounting the only portion of that opinion which according to the Vocational Expert testimony would result in the Plaintiff's limitations meeting a Vocational Rule that calls for a finding of disability, without adequate justification for doing so." *Id.* at 11.

As explained above, the Commissioner has the burden at step five of the sequential evaluation process of establishing the claimant's ability to work by proving the existence of a significant number of jobs in the national economy that the claimant could perform, given his or her age, experience, education, and residual functional capacity. 20 CFR §§ 404.1520, 416.920. *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990). The Commissioner's burden at step five can be satisfied by relying on the grid rules only if Plaintiff is not significantly limited by nonexertional impairments, such as mental limitations, manipulative limitations, or environmental limitations. *Abbot v. Sullivan*, 905 F.2d 918, 926 (6th Cir. 1990).

In the presence of nonexertional limitations that would preclude the application of the grid, "expert testimony would be required to satisfy the Secretary's burden of proof regarding the availability of jobs which this particular claimant can exertionally handle." *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 531 (6th Cir. 1983). In other words, the ALJ may rely on the testimony of a VE in response to a hypothetical question as substantial evidence of the existence of a significant number of jobs that the claimant is capable of performing as long as the hypothetical question accurately represents the claimant's credible limitations. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d at 779, *quoting O'Banner v. Sec'y of Health, Ed. &*

*Welfare*, 587 F.2d 321, 323 (6th Cir. 1978).

At Plaintiff's hearing, the ALJ in the case at bar posed several hypothetical questions to the VE. TR 45-46. The ALJ first queried:

> Q:    Assume an individual age 50 to 52 with a ninth-grade education. Well, first of all, let's have the description of the past work.

> A:    Yes, sir. Cashier-checker. Dot code 211.462-014. Light, semi-skilled, SVP of 3. As performed at times it rose to the medium level. And leather cutter. DOT code 783.684-022. Light, semi-skilled, SVP of 4.

> Q:    All right. Assume an individual - are there any transferrable skills to sedentary work?

> A:    No, sir.

TR 45.

The ALJ then queried:

> Q:    If a person were limited of course to sedentary work, then the written rule would – directly find them disability [*sic*]. If a person on the other hand were limited to performing light work further had reaching – could reach frequently, handle, finger, feel and use hand controls and foot controls frequently. Could occasionally climb ramps and stairs. Never ladders, ropes or scaffolds. Occasionally balance. Never stoop, kneel, crouch or crawl. Never be exposed to unprotected heights, moving mechanical parts, operate a motor vehicle. Occasionally exposure to wetness, humidity, pulmonary irritants. Never extreme heat or cold or vibration. Could any of the past work be performed with those limits?

> A:    No, sir.

> Q:    Okay. Could any other jobs at the light level be performed?

> A:    Yes, sir. Examples of occupations would include light, unskilled retail marker positions. DOT code 209.587-034. SVP of 2. Existing within the

U.S. for 292,000 positions. Light, unskilled router positions. DOT 222.587-038. SVP of 2. Existing within the U.S. for 54,000 positions. As well as furniture rental clerk. DOT code 295.357-018. SVP of 2. Existing within the U.S. for 52,000 positions.

TR 46.

Plaintiff's attorney also posed questions to the VE during Plaintiff's hearing. TR 46-48.

Plaintiff's attorney first queried:

Q:      You mentioned that jobs in response to a hypothetical that included light work. One of the restrictions was never stooping. Would that affect the jobs that you described? I am unclear.

. . .

A:      Stooping is not required for the marker position. Check the next one. And not required for the router position. Okay. I need to eliminate the furniture rental clerk because that requires occasional stooping. . . . Im trying to find a third position, Your Honor. Okay. Im going to add information clerk. DOT number 237.367-018. SVP 2. Existing within the U.S. for 89,000 positions.

TR 46-47.

Plaintiff's attorney further queried:

Q:      And if we added to the limitations of hypothetical #2 that the person would not sit for more than two hours at a time, stand for more than one hour at a time, and walk for more than 30 minutes at a time during the workday. Would that affect the jobs that you've listed?

A:      Yes, because what I provided was information based on light positions. And with the additional restrictions, with the limitations that you added, it appears that sedentary range of work would be required.

Q:      Okay. And we've already established that would bring her within the vocational GRIDS. Those are all the questions I have, Ms. Harris.

TR 47-48.

As can be seen, the ALJ posed hypothetical questions to the VE, incorporating exertional

and nonexertional limitations alleged by Plaintiff and/or contained within the record. TR 46. As has been discussed in the statements of error above, the ALJ properly evaluated the evidence, found that Plaintiff's allegations were not fully credible, and ultimately determined that Plaintiff retained the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can frequently reach overhead and in all other directions; frequently handle, finger and feel; can frequently operate hand controls and foot controls bilaterally; occasionally climb ramps and stairs but never ladders, ropes or scaffolds; occasionally balance but never stoop, kneel, crouch or crawl; can never be exposed unprotected heights, moving mechanical parts or operating a motor vehicle; can occasionally be exposed to wetness, humidity and pulmonary irritants; and can never be exposed to temperature extremes or vibration.

TR 17.

An ALJ may rely on the testimony of a VE in response to a hypothetical question as substantial evidence of the existence of a significant number of jobs that the claimant is capable of performing as long as the hypothetical question accurately represents the claimant's credible limitations. *See Varley*, 820 F.2d at 779, *quoting O'Banner v. Sec'y of Health, Ed. & Welfare*, 587 F.2d 321, 323 (6th Cir. 1978).

In the instant action, the hypothetical question posed to the VE by the ALJ, upon which the ALJ relied to establish the existence of a significant number of jobs in the national economy that Plaintiff could perform, accurately reflected the limitations that the ALJ found credible, consistent with, and supported by, the evidence of record. *See* TR 46. Because the hypothetical question upon which the ALJ ultimately rendered his decision accurately represented Plaintiff's credible limitations, the ALJ properly relied on the VE's answer to that hypothetical question to prove the existence of a significant number of jobs in the national economy that Plaintiff could

perform.  *See Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994); *Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 927-28 (6th Cir. 1987); *Varley*, 820 F.2d at 779.  Accordingly, Plaintiff's claim fails.

## IV.  RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's "Motion for Judgment Upon the Administrative Record" be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court.  Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections.  Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation.  *See Thomas v. Arn,* 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.


JEFFERY S. FRENSLEY
United States Magistrate Judge