IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| LISA HAMILTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | NO. 3:18-cv-1309 |
| v. ) | JUDGE RICHARDSON |
| ) | |
| ANDREW W. SAUL, Commissioner of ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

## ORDER AND MEMORANDUM OPINION

Pending before the Court are a Report and Recommendation ("R&R") of the Magistrate Judge (Docket No. 21), Objections filed by Plaintiff (Docket No. 22), and a response to the Objections filed by Defendant. (Doc. No. 23).

When a magistrate judge issues a report and recommendation regarding a dispositive pretrial matter, the district court must review *de novo* any portion of the report and recommendation to which a proper objection is made. Fed. R. Civ. P. 72(b)(3). The district judge may accept, reject, or modify the recommended disposition, review further evidence, or return the matter to the magistrate judge with instructions. *Id*.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(3), the Court has reviewed *de novo* the R&R, the Objections, the response, and the file. For the reasons set forth herein, the Objections of the Plaintiff are overruled, and the R&R is adopted and approved.

Accordingly, Plaintiff's Motion for Judgment upon the Administrative Record (Doc. No. 17) is **DENIED**, and the decision of the Social Security Administration is **AFFIRMED**.

## BACKGROUND

The Court need not repeat the entire factual and procedural background, as it is aptly set forth in the R&R. In summary, Plaintiff filed a Title II application for disability benefits on May 9, 2016, alleging disability beginning August 15, 2014. She listed the physical or mental conditions that limited her ability to work as follows: "Bulging Disc in my Lower Back. Can't Stand on flat feet, Legs, Ankles and Knees. High and Low High Blood Pressure. Hot Flashes in days and Hot flashes at night. Can't Sleep good. Headaches & U.T." (Doc. No. 15 at 166).[1] Plaintiff appeals from a decision of an Administrative Law Judge ("ALJ") that denied her claim for disability benefits.

Plaintiff has filed two objections to the ALJ's decision: (1) the ALJ's evaluation of the opinion evidence from Plaintiff's treating physician, Dr. McKinney, is not substantially supported by the record; and (1) the ALJ's evaluation of Plaintiff's subjective complaints are not supported by substantial evidence. (Doc. No. 22). In accordance with Fed. R. Civ. P. 72(b)(3), the Court will review *de novo* these two specific objections and the portions of the R&R and ALJ's decision to which those objections relate.

## ANALYSIS

The critical questions before the district court in reviewing a decision by an ALJ is whether the ALJ's determination was supported by substantial evidence and whether the ALJ applied the correct legal standards. *Shelton v. Saul,* No. 2:18-cv-00093, 2020 WL 1284628, at *2 (M.D. Tenn. Mar. 18, 2020) (citing 42 U.S.C. § 405(g)). The court conducts its review under a "highly

---

[1] The Administrative Record ("AR") is filed at Docket No. 15. The page numbers cited herein are the page numbers placed at the bottom of each page by the Court's docketing system ("Page ___ of 448").

deferential," substantial-evidence standard. *Jones v. Berryhill*, 392 F. Supp. 3d 831, 838 (M.D. Tenn. 2019). The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. *Biestek v. Berryhill*, --- U.S. ---, 139 S. Ct. 1148, 1154 (2019), *cited in Jones* at 838.

Under the "substantial evidence" standard, a court looks to an existing administrative record and asks whether it contains "sufficient evidence" to support the agency's factual determinations. *Biestek,* 139 S. Ct. at 1154. And, whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. *Id*. Substantial evidence is "more than a mere scintilla" and means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id., cited in Shelton*, 2020 WL 1284628, at *2. The standard, by all accounts, amounts to "less than a preponderance of the evidence," and is met even if the record could reasonably support the opposite conclusion. *Brown v. Comm'r of Soc. Sec.,* --- F. App'x ---, 2020 WL 2768857, at *3 (6th Cir. 2020).

### A. Objection 1 – ALJ's Treatment of Dr. McKinney's Opinion

An ALJ must give the opinion of a "treating physician" (one who has an ongoing treatment relationship with the claimant) controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record. *Brown*, 2020 WL 2768857, at *3. Where the treating physician's opinion is contrary to substantial evidence in the record, the ALJ determines how to weigh that opinion by considering a number of factors, including the length of the treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the

3

treating physician. *Id.*[2] The ALJ must give good reasons regarding its weighing of the treating physician's opinion; that is, reasons supported by the record and "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id*. (quoting *Blakeley v. Comm'r of Soc. Sec.,* 581 F.3d 399, 406-07 (6th Cir. 2009)).

Here, the ALJ stated that "significant weight is accorded to the opinion of the claimant's primary care provider, Dr. McKinney, who opined that Plaintiff could lift and carry up to twenty pounds occasionally; sit a total of six hours in a workday; stand and walk a total of four hours in an eight-hour workday; frequently reach, handle, finger, feel, push and pull; frequently operate foot controls; occasionally climb ramps and stairs but never ladders, ropes or scaffolds; occasionally balance and never stoop, kneel, crouch and crawl; and should avoid unprotected heights, moving mechanical parts, operating a motor vehicle, temperature extremes, pulmonary irritants, humidity and wetness, temperature extremes and vibration." (Doc. No. 15 at 25).[3]

While according "the greatest weight to these opinions," the ALJ found that Dr. McKinney's opinions regarding Plaintiff's ability to perform manipulative tasks was not supported by the evidence because "there have been no abnormal findings related to the claimants' upper or lower extremities that would support these opinions," and, by Plaintiff's own statements, she "has no difficulty in doing tasks that require the use of her hands." (*Id*.) Thus, he did give reasons for according lesser weight to these opinions. Moreover, in his opinion, the ALJ cited to medical

---

[2] *See also* 20 C.F.R. § 416.927 for guidance on evaluating opinion evidence for claims filed, as here, before March 27, 2017.

[3] Dr. McKinney's "Medical Source Statement of Ability To Do Work-Related Activities (Physical)" is found at Doc. No. 15, pages 411-416.

4

records from University Hospital reflecting that the physician found 5/5 strength in all Plaintiff's extremities (Doc. No. 15 at 355, 360-62); records from Dr. Richie reflecting that he found normal strength and sensation in Plaintiff's lower and upper extremities (*Id*. at 392-93); MRI results from August 2015 reflecting "minimal" stenosis and "minimal to mild" stenosis. (Id. at 317); and records from Dr. McKinney indicating that Plaintiff moved all four extremities well (*Id*. at 422 and 427). To the extent the ALJ gave lesser weight to Dr. McKinney's opinion on this issue, he sufficiently explained his reasons.[4]

The ALJ accepted the findings of Dr. McKinney that Plaintiff could sit a total of six hours in a workday and could stand and walk a total of four hours in an eight-hour workday, but he accorded little weight to Dr. McKinney's opinion that Plaintiff could sit only two hours *at one time*, stand only two hours *at one time*, and walk only thirty minutes *at one time*, finding that there "are no significant abnormal examination findings that support these limitations." (*Id*.) For example, in explaining the particular medical or clinical findings that supported his assessment or limitations on Sitting/Standing/Walking, Dr. McKinney stated that Plaintiff has osteoarthritis of the knee and back, "mild to moderate." (Doc. No. 15 at 412).

Plaintiff specifically objects to the fact that neither the ALJ nor Defendant has acknowledged Plaintiff's testimony that she had been a patient of Dr. McKinney's since the age

---

[4] The Court notes that although the ALJ states that Dr. McKinney's opinion regarding Plaintiff's ability to perform manipulative tasks is not supported by the evidence, he nonetheless includes, as part of his findings concerning Plaintiff's residual functional capacity, Dr. McKinney's recommendation that Plaintiff can "frequently" reach, handle, finger, feel and push/pull in his finding concerning Plaintiff's residual functional capacity. (Doc. No. 15 at 21).

5

of 16. (Doc. No. 22 at 2).[5] She cites to Defendant's response to her Motion for Judgment Upon the Administrative Record, where Defendant argues that Dr. McKinney had seen Plaintiff on only a "few occasions," but that argument comes from Defendant's brief, not from the findings of the ALJ. The ALJ, as Defendant notes (Doc. No. 19 at 7), analyzed Dr. McKinney's opinion in a manner consistent with the evaluation of a *treating physician* opinion. Indeed, the ALJ stated that he accorded "the greatest weight" to the opinions of Dr. McKinney, except as to the two opinions noted above (manipulative tasks and time sitting, standing and walking at one time), which he found to be unsupported by the medical evidence in the record. There is no indication that the ALJ "proceeded to discount the treating physician opinion" as Plaintiff asserts, because of the small (according to Defendant) number of times Plaintiff had seen this physician.

Plaintiff asserts that her "central contention" is that Dr. McKinney is a "treating physician" whose opinion is entitled to controlling weight. (Doc. No. 22 at 2). The ALJ did not dispute that Dr. McKinney was a "treating physician" or proceed as if Dr. McKinney was not a "treating physician." And the ALJ gave "the greatest weight" to Dr. McKinney's opinions that were supported by substantial evidence in the record.[6] He explained his reasons for giving lesser weight to these two opinions of Dr. McKinney. Plaintiff's objection as to this issue is overruled.

---

[5] As noted above, where the treating physician's opinion is contrary to substantial evidence in the record, the length of the treatment relationship is one factor for the ALJ to consider in determining the weight to give the treating physician's opinion. *Brown*, 2020 WL 2768857, at *3.

[6] The federal regulation applicable to Plaintiff's case states that the Social Security Administration will give controlling weight to a treating physician's medical opinion on the nature and severity of a claimant's impairments if it finds that opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence" in the claimant's case record. 20 C.F.R. § 416.927(c)(2).

### B. Objection 2 – ALJ's Treatment of Plaintiff's Subjective Complaints

The ALJ stated that "the functional restrictions alleged by the claimant have been found to be disproportionate to the clinical findings." (Doc. No. 15 at 25). He stated that Plaintiff's "subjective complaints have been accepted, as far as they were supported by the objective evidence and record as a whole." (*Id.* at 26). He reported that he had "considered all the symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." (*Id*. at 21). He cited the two-step process required in considering a claimant's symptoms: (1) determining whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the claimant's pain or other symptoms; and (2) evaluating the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functional limitations. (*Id*.) He acknowledged that whenever statements about the intensity, persistence, and functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, he must consider other evidence in the record to determine whether Plaintiff's symptoms limit her ability to do work-related activities. (*Id*.)

Although the ALJ found that Plaintiff's underlying medically determinable physical impairment could reasonably be expected to cause the alleged symptoms, he determined that Plaintiff's statements about the intensity, persistence and limiting effects of these symptoms were not entirely consistent with the medical and other evidence in the record. (Doc. No. 15 at 22). Plaintiff specifically contends that neither the ALJ nor the Magistrate Judge has cited *which* medical evidence in the record was inconsistent with Plaintiff's subjective complaints. *But see* R&R at 11-15 and Doc. No. 15 at 22-24.

The ALJ found that, while Plaintiff was a sincere witness, the objective medical evidence failed to support the extreme limitations she alleged. (Doc. No. 15 at 24). He cited to medical records that reflected Plaintiff's reporting of her pain to be no more than moderate; range of motion testing that has been normal throughout the record; reports of normal gait throughout her record; to an MRI of her lumbar spine that showed "minimal to mild" facet arthropathy with no significant stenosis; and to Plaintiff's minimal treatment, which was almost exclusively general refills for pain medications. (*Id*).

In addition, the ALJ cited to an October 17, 2014 medical record from University Hospital, where Plaintiff presented with shortness of breath, blood pressure problems, and weakness with hot flashes. (Doc. No. 15 at 22). Those records are found at Doc. No. 15, pp. 358-378. At that time, Plaintiff reported no associated back pain, and an examination revealed motor strength of 5/5 for all Plaintiff's extremities, normal gait, full range of motion of Plaintiff's neck, and normal range of motion for her back. (*Id*. at 360-62). These records are not consistent with Plaintiff's descriptions of the nature and severity of her symptoms.

The ALJ also cited to a November 3, 2014 medical record from University Hospital concerning Plaintiff's visit to the emergency room for a migraine headache. (Doc. No. 15 at 22). Those records reveal that she again had normal range of motion and normal strength. As for her back, the medical notes state "No spinal tenderness. No costovertebral tenderness. Full range of motion." (*Id*. at 355). The records also reflect motor strength of 5/5 in all extremities. (*Id*.) This record does not support the severity of Plaintiff's symptoms as reflected in her testimony and subjective complaints.

The ALJ also cited to January 2015 medical records from Family Medical that indicate that Plaintiff presented with lumbar region pain which she described as moderate in severity and

8

radiating into the right leg. (Doc. No. 15 at 382). Physical examination revealed that her cervical range of motion was within normal limits and there was no spinal tenderness or misalignment, but she had a decrease in range of motion for the lumbar spine, and there was mild paraspinal muscle spasm and a positive straight leg raise. (*Id*. at 384).

Next, the ALJ noted an April 18, 2015 medical record in which Plaintiff's range of motion in the cervical and lumbar spine was normal and full and her gait was steady. (Doc. No. 15 at 23 and 326). An August 24, 2015 MRI of Plaintiff's lumbar spine reflected L4-L5 facet arthropathy causing minimal left foraminal stenosis and a L5-S1 posterior disc bulge and facet arthropathy producing minimal to mild bilateral foraminal stenosis. (*Id*. at 317).

On September 29, 2015, Plaintiff was evaluated by Dr. Lucas Richie for low back pain. His records reflect that Plaintiff reported a "constant aching and throbbing pain most aggravated by prolonged standing, prolonged sitting, walking, forward bending, lifting and sleeping." (Doc. No. 15 at 390). Plaintiff also complained of knee pain, ankle pain, and foot pain but denied numbness, tingling or weakness. (*Id*.) Physical examination on this visit revealed full and painless range of motion of her cervical spine and full range of motion with normal strength and sensation in her upper and lower extremities. (*Id*. at 392-93).

Dr. McKinney's August 2016 report reflects that, although she reported low back pain with radiation to the bilateral lower extremities, Plaintiff moved her extremities well and had a normal gait with no sensory deficits. (Doc. No. 15 at 405). Dr. McKinney's assessment on that date was osteoarthrosis of the knee and osteoarthritis of the spine and chronic pain syndrome. (*Id*). In his next report, in April 2017, Dr. McKinney found that Plaintiff was doing well and taking tramadol for pain with good results. (*Id*. at 420). His physical exam showed that Plaintiff moved all four extremities well and had a normal gait. (*Id*. at 422). His assessment of osteoarthrosis and

9

osteoarthritis remained the same. (*Id*.) Finally, Dr. McKinney's September 29, 2017 records note again that Plaintiff is taking tramadol with good relief *(id*. at 445), moved her extremities well, and had a normal gait. (*Id*. at 447). Dr. McKinney noted that Plaintiff still experienced mild pain but was able to get relief from medicines. (*Id*.)

Thus, it is not true that the ALJ failed to identify *which* medical evidence in the record was inconsistent with Plaintiff's subjective complaints. He accepted Plaintiff's subjective complaints as far as they were supported by the objective evidence and the record as a whole, and he identified those portions of the record that were inconsistent with Plaintiff's complaints and discounted them accordingly. Therefore, Plaintiff's second objection is also overruled.

## **CONCLUSION**

Plaintiff's Objections are overruled, and the R&R of the Magistrate Judge is adopted and approved. Accordingly, Plaintiff's Motion for Judgment upon the Administrative Record is **DENIED**, the decision of the Commissioner of the Social Security Administration is **AFFIRMED**, and this action is **DISMISSED**. The Clerk is directed to close this file. This Order shall constitute the final judgment for purposes of Fed. R. Civ. P. 58.

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE